UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Thomas Russell,

Plaintiff,

v.

One Power Company *f/k/a*
One Energy Enterprises, Inc.,

Defendant.

Case No. 3:25-cv-643

MEMORANDUM OPINION
AND ORDER

## I. INTRODUCTION

Plaintiff Thomas Russell initiated this litigation against Defendant One Power Company asserting claims under the Employee Retirement Income Security Act ("ERISA"), the Ohio Whistleblower Protection Act, the Age Discrimination in Employment Act ("ADEA"), and Ohio common-law wrongful discharge. (Doc. No. 1). Russell subsequently amended his complaint as of right. (Doc. No. 4). One Power moved to dismiss Russell's claims for failure to state a claim under Rule 12(b)(6). (Doc. No. 6). Russell opposed the motion, (Doc. No. 8), and One Power filed a reply. (Doc. No. 9). Russell then moved for leave to amend his complaint a second time, seeking to add claims under Title VII and Ohio anti-discrimination law. (Doc. No. 11). For the reasons stated below, I grant One Power's motion to dismiss, and grant in part and deny in part Russell's motion for leave to file a second amended complaint.

## II. Background

Russell worked as Chief Financial Officer for One Power from January 22, 2024, until October 4, 2024. (Doc. No. 4 at 1-2). During his brief tenure, Russell received positive reviews and two bonuses. (*Id.* at 2).

As part of his duties, Russell collaborated with Chief Executive Officer Jereme Kent and Elizabeth Walls, another One Power employee, to create a financial model. (*Id.* at 3). Kent allegedly provided inputs and assumptions concerning prior engineering, procurement, and construction ("EPC") work, upon which Russell relied when developing the model. (*Id.* at 4). On September 24, 2024, Russell led a meeting with representatives from Stifel to discuss the financial model. (*Id.* at 3). Following the meeting, Russell alleges he and Kent determined that updates and corrections were needed to the GAAP accounting treatment of One Power's EPC work. (*Id.* at 4).

Around this same time, Russell allegedly became aware that – at Kent's direction – One Power was not fully funding employee 401(k) accounts in an effort to preserve funds for other purposes. (*Id.* a 2). Russell asserts he complained about this failure to fund employee accounts on September 26, 2024, through Google Chat, cautioning that Kent's directive was illegal. (*Id.* at 3). He also alleges he informed the Chief Regulatory Officer and a member of the Board of Directors that, based on his industry experience, the failure to fund the accounts was illegal and potentially constituted a felony. (*Id.*).

On October 4, 2024, Russell asserts Kent and the Board of Directors terminated his employment "allegedly based on information [Kent] provided to the Board." (*Id.*) While Russell was not initially given a reason for his termination, a board member later told him that the decision was based on errors in the financial model. (*Id.*). No other individuals involved in creating the financial model were terminated or otherwise disciplined. (*Id.* at 5).

Russell alleges that he was terminated in retaliation for reporting One Power's failure to fully fund employee 401(k) plans and because of his age. (*Id.* at 4-10). Based on those allegations, he asserts claims under ERISA, 29 U.S.C. § 1140 et seq., (Count I), the Ohio Whistleblower Protection Act, Ohio Revised Code § 4112.52 et seq., (Count II), Ohio common-law wrongful discharge in violation of public policy (Count III), and ADEA, 29 U.S.C. § 621 et seq, (Count IV). (*Id.*).

## III. STANDARD

Rule 12 provides for the dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain detailed factual allegations, its factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

A plaintiff must offer more than conclusory allegations or legal conclusions masquerading as factual allegations. *Twombly*, 550 U.S. at 555 ( "[A] formulaic recitation of the elements of a cause of action" is insufficient). A complaint must contain sufficient facts which, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and requires the complaint to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Courts must read Rule 12(b)(6) in conjunction with Rule 8(a)(2)'s requirement that a plaintiff need offer "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need

only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests."' *Erickson*, 551 U.S. at 93 (citing *Twombly*, 550 U.S. at 555) (further quoting *Swierkiewicz v. Sorema N.S.*, 534 U.S. 506, 515 n.1 (2022)).

## IV. Discussion

### A. ERISA Retaliation

One Power argues that Count I fails as a matter of law because Russell was not engaged in a protected activity under ERISA when he reported concerns about employee 401(k) accounts. (Doc. No. 6 at 9). Russell responds he was exercising a right protected by ERISA when he voiced his complaints to One Power. (Doc. No. 8 at 9-10). Thus, he was engaged in a protected activity. (*Id.* at 10).

In relevant part, § 1140 makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. The statute further prohibits adverse action against an employee "because [the employee] has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter." *Id.*

Russell's argument that was engaged in a protected activity when he voiced his complaints over One Power's failure to fund employee 401(k) accounts fails as a matter of law. Russell contends that as a participant in an ERISA plan, he "has the right to inquire about or complain about the status of his account." (Doc. No. 8 at 9-10). Russell relies on *Simpson v. Ernst & Young*, 879 F. Supp. 802, 823 (S.D. Ohio 1994), in support of this argument. (*Id.*). But in *Simpson*, the plaintiff was discharged after making persistent, formal inquiries regarding his retirement benefits and requesting plan information following a corporate merger. 879 F. Supp. at 824. It was critical to the *Simpson* court's analysis that certain ERISA provisions grant plan participants an explicit statutory right to request and receive summary plan descriptions, information concerning

modifications to the plan, and benefit statements. *Id.* at 823-24 (citing 29 U.S.C. §§ 1024(b)(1), 1024(b)(4), and 1025(a)). Thus, that court concluded the plaintiff was exercising a right expressly protected by ERISA when he requested that information. *Simpson*, 879 F. Supp. at 824-25.

Those are not the circumstances presented here. Russell does not allege he requested information concerning retirement benefits, demanded plan documents, or sought information which he was entitled to under ERISA. Nor does he allege that he was discharged for inquiring about his own retirement benefits. Instead, the complaint alleges that Russell voiced an informal internal complaint regarding Kent's alleged unlawful conduct and was terminated in response. (Doc. No. 4 at 3, 5). The Sixth Circuit has firmly rejected the argument that such internal complaints constitute protected activity under ERISA. *See Sexton v. Panel Processing, Inc.*, 754 F.3d 332, 335-36 (6th Cir. 2014).

In *Sexton*, the Sixth Circuit explained that the language of § 1140 demonstrates that Congress's intent was "to prevent interference with inquires and proceedings." *Id.* at 337. To that end, "[i]n enacting [§ 1140], Congress included only a clause protecting people who give information or testify in inquiries and proceedings." *Id.* at 336. An inquiry involves either: (1) "an official investigation"; or (2) "a question or request for information." *Id.* at 335. ERISA does not protect employees "who oppose, report, or complain about unlawful practices." *Id.* at 336. Thus, making an unsolicited, internal complaint concerning an alleged ERISA violation is not a protected activity. *Id.* at 335 (holding that the plaintiff's unsolicited internal email complaining about alleged ERISA violations did not constitute "giving information . . . in an inquiry" and was therefore not protected under ERISA).

Russell correctly notes that there is a circuit split on this issues and that several circuits have interpreted § 1140 more broadly. (Doc. No. 8 at 9). *See, e.g.*, *Anderson v. Elec. Data Sys. Corp.*, 11 F.3d 1311, 1315 (5th Cir. 1994) (holding that reporting an ERISA violation to management constituted

protected activity); *George v. Junior Achievement of Cent. Indiana, Inc.*, 694 F.3d 812, 815-17 (7th Cir. 2012) (holding that internal complaints concerning an employer's failure to make required contributions constituted an "inquiry"); *Acosta v. Brain*, 910 F.3d 502, 513 (9th Cir. 2018) (holding that internally reporting a legal violation about an ERISA plan is a protected activity). But I am bound by Sixth Circuit precedent. And the Sixth Circuit's interpretation of § 1140 does not extend to "a one-time unsolicited complaint to [an] employer about alleged violations of the Act." *Sexton*, 754 F.3d at 334.

Russell did not testify in an inquiry or proceeding. Nor did he respond to a question or request for information, or otherwise engage in a protected activity. Thus, Count I fails as a matter of law. Accordingly, I grant One Power's motion to dismiss Count I with prejudice.

### B. State Law Retaliation Claims

Russell brings a claim under the Ohio Whistleblower Protection Act, (Doc. No. 4 at 6-7), as well as a common-law claim for wrongful discharge in violation of public policy. (*Id.* at 7-8). One Power argues that ERISA preempts both claims. (Doc. No. 6 at 4-8).

Section 1144(a) provides:

> [T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a) (emphasis added).

The Supreme Court has recognized that ERISA's preemption clause is "conspicuous for its breadth." *FMC Corp. v. Holiday*, 498 U.S. 52, 58 (1990). "Indeed, 'virtually all state law claims relating to an employee benefit plan are preempted by ERISA.'" *Longaberger Co. v. Kolt*, 586 F.3d 459, 472 (6th Cir. 2009) (abrogated on other grounds by *Montanile v. Bd. of Trs. of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136 (2016)) (quoting *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991)). A state law "relates to" an employee benefit plan under the meaning of

§ 1144(a) "if it has a connection with or reference to such a plan." *Shaw v Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). "[O]nly those state laws and state law claims whose effect on employee benefit plans is merely tenuous, remote[,] or peripheral" escape ERISA preemption. *Cromwell,* 944 F.2d at 1276. Thus, a state law may be preempted "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987)).

Here, Russell's state-law claims are based directly on One Power's alleged failure to make required contributions to employee 401K plans and on Russell's internal reporting of that conduct. The claims cannot be characterized as "tenuous, remote[,] or peripheral" to employee benefit plans. *Cromwell,* 944 F.2d at 1276. If there were no plan, there would be no state anti-retaliation claim to advance. *Ingersoll-Rand*, 498 U.S. at 140 (claim "relates to" ERISA, in part, because "there simply is no cause of action if there is no plan") (emphasis omitted).

Because both claims are based on alleged violation of ERISA and depend on the existence of One Power's employee benefit plan, they are preempted by ERISA. *See id.* (holding that wrongful discharge claim was preempted by ERISA because the action was dependent on the existence and consideration of an employee benefit plan); *see also Zuniga v. Blue Cross and Blue Shield of Mich.*, 52 F.3d 1395, 1402 (6th Cir. 1995) (finding plaintiff's claim "related to" employee benefit plan and was preempted because claim required the court to construe the terms of the defendant's employee benefit plan).

Further, while Russell alleges One Power's conduct violated Ohio state law, (Doc. No. 4 at 6-8), Congress deliberately designed ERISA to "'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life*, 481 U.S. at 46 (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). The structure and legislative history of ERISA show Congress's intent to reserve "'to Federal authority the sole power to regulate the field of employee benefit plans.'" *Shaw*, 463 U.S. at

99 (quoting 120 Cong. Rec. 29197 (1974)). And Congress exercised that authority by enacting an ERISA anti-retaliation provision addressing claims such as those advanced by Russell – § 1140. Thus, Congress intended ERISA to be the controlling authority to redress Russell's alleged injuries and his state-law claims are preempted.

Because Russell's state-law claims fail as a matter of a law, I grant One Power's motion to dismiss Count II and Count III with prejudice.

### C. Age Discrimination

The ADEA prohibits employers from discharging an individual "because of such individual's age." 29 U.S.C. § 623(a)(1). The protections of the Act apply to persons 40 years old and older. 29 U.S.C. § 631(b). "To succeed on a disparate-treatment claim under the ADEA, a plaintiff must show, by a preponderance of the evidence, that age was the 'but-for' cause of an adverse employment decision. *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 894 (6th Cir. 2024) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-78 (2009)). An ADEA plaintiff may prove his claim using "either direct or circumstantial evidence." *McNeal*, 117 F.4th at 895. Direct evidence "'proves the existence of a fact without requiring any inferences,'" while circumstantial evidence "requires factfinders to draw inferences from the evidence to determine that a plaintiff's termination was based on age." *Id.* (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)) (further citation omitted).

Russell alleges One Power discriminated against him because of his age. (Doc. No. 4 at 8-10). According to Russell, "similarly situated substantially younger employees under the age of forty have been more favorably treated[ ]and were not terminated over the same issues for which Plaintiff was terminated." (*Id.* at 9).

Russell fails to state a plausible claim for age discrimination. The only allegedly similarly situated co-worker Russell identified in his complaint was Kent. (*See* Doc. No. 4 at 3-4, 9). But

Russell and Kent are not in fact similarly situated. Russell alleges he was hired as One Power's Chief Financial Officer in January 2024. Kent, on the other hand, is One Power's "Founder and CEO with complete control of the company." (*Id.* at 4). And Kent made "[t]he decision to terminate" Russell. (*Id.* at 3). Russell fails to explain how Kent's decision to fire only Russell, and not also himself, for the alleged errors in the financial model could plausibly support the necessary conclusion that Kent would not have terminated Russell but for Russell's age. And, because Russell has not identified any other individual outside the protected class, his allegation that "similarly situated substantially younger employees" were treated more favorably is no more than a legal conclusion couched as a factual allegation. (*See id.* at 9).

Therefore, I grant One Power's motion to dismiss this claim as well.

## D. MOTION FOR LEAVE TO AMEND

Russell seeks leave to file a second amended complaint asserting claims under Title VII and Ohio Revised Code § 4112.02 for sex discrimination and under § 4112.02 for age discrimination. (Doc. No. 11). The impetus for the proposed amendment is Russell's receipt of right-to-sue letters from the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC"), which he attached to his proposed amended complaint. (*Id.* at 2); (Doc Nos. 11-3, 11-4). Russell argues that leave should be granted because discovery has not yet commenced, the proposed amendment does not materially alter the factual allegations of the case, and One Power would suffer no prejudice from the amendment. (Doc. No. 11 at 2). One Power has not filed a response in opposition to Russell's motion.

The Supreme Court has explained:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject to relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason–such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

> opposing party by virtue of allowance of the amendment, futility of amendment, etc. —the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal citation omitted).

Because the ADEA and Ohio age discrimination claims are analyzed under the same framework, Russell's proposed age-discrimination claim under § 4112.02 is futile for the reasons stated above. *Spencer v. Nat'l City Bank*, 732 F. Supp. 2d 778, 790 (S.D. Ohio 2010) (quoting *Ercegovich*, 154 F.3d at 357) ("'Under Ohio law, the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis.'").

Similarly, "[b]ecause the elements of an Ohio sex-discrimination claim mirror the elements of a claim under Title VII, we analyze the state and federal claims together." *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 488 n.4 (6th Cir. 2014) (citing *Laderach v. U-Haul of Nw. Ohio*, 207 F.3d 825, 828 (6th Cir. 2008)). Title VII prohibits employers from discriminating against employees on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Russell must plead facts to support a reasonable inference that he was unlawfully terminated on the basis of his sex. *Iqbal*, 556 U.S. at 678.

In the proposed second amended complaint, Russell alleges that he is male, (Doc. No. 11 at 11), that he was qualified for his position based on his education and experience, *id.*, that he was meeting or exceeding One Power's expectations, *id.*, and that he was replaced by a female employee. (*Id.* at 12). In determining the sufficiency of the pleadings, I may also consider the allegations contained in the charge attached to the proposed amendment. *See Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999) (holding that courts may consider documents attached to the complaint that "[are] referred to in the [plaintiff's] complaint and [are] central to the plaintiff's claim."). Taken together and as true for purposes of the motion to amend, the allegations that Russell was replaced by a female employee supports an inference that Russell was terminated based on sex. Thus, I find Russell's sex discrimination claims are not futile.

Further, nothing in the record suggests that Russell has acted with undue delay, bad faith, or a dilatory motive. Nor has he repeatedly failed to cure deficiencies through prior amendments. And One Power has not argued it would be unduly prejudiced by the amendment.

Lastly, Russell could not have asserted the claims in the proposed amended complaint until after receipt of the right-to-sue letters. Under these circumstances, I conclude justice requires I grant Russell's motion for leave to amend the complaint. *See Myers v. Ace Hardware, Inc.*, 777 F.2d 1099, 1100 (6th Cir. 1985) ("The District Court granted leave to amend the complaint to include Title VII allegations after both plaintiffs received right-to-sue letters.") (internal citation omitted); *see also Dozier v. Chupka*, 395 F. Supp. 836, 848 (S.D. Ohio 1975) (noting court would have granted leave to amend after plaintiff received a right to sue letter because doing so would not have prejudiced the defendant).

## IV. Conclusion

For the reasons stated above, I grant Defendant One Power Company's motion to dismiss Counts I, II, III, and IV for failure to state a claim upon which relief may be granted. (Doc. No. 6). Further, I grant Plaintiff Thomas Russell's motion for leave to file a second amended complaint, (Doc. No. 11), as to his proposed sex discrimination claims but deny the motion as to his proposed state-law age discrimination claim. Russell shall file a second amended complaint consistent with this Memorandum Opinion and Order within 21 days of its filing.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge